## Herman Stearns et al.

### v.

## Joseph F. Cook.

*Sales—Exchange of Live Stock—Acceptance—Waiver—Damages—Instructions.*

In an action for an alleged breach of contract, whereby loss was sustained through the death of a Spanish jack received in a horse trade, it being claimed that his death was caused by his being ill-used by the defendant, in driving him to the house of the plaintiff, it is *held:* That the verdict for the plaintiff was contrary to the evidence, and that the instructions were erroneous, particularly in not stating what would constitute an acceptance amounting to a waiver of defects.

[Opinion filed May 25, 1888.]

Appeal from the County Court of Vermilion County; the Hon. D. D. Evans, Judge, presiding.

Mr. W. R. Lawrence, for the appellants.

Mr. J. B. Mann, for appellee.

Pleasants, J. Appellee brought this suit in assumpsit against appellants for an alleged breach of contract for the exchange of a Clydesdale horse, of plaintiff, for a buck-board set of harness, and a Spanish jack, of the defendants, to be made at the plaintiff's · residence, which was between twenty and twenty-five miles distant from that of the defendants. The contract was made on the 17th of December, 1886, and the particular promise counted on, as stated in the declaration, was that the defendants would deliver the jack at the plaintiff's house, "at a time when the roads were soft, so that the feet and limbs of said jack would not be injured by transferring him from the place of residence of said defendants to the house of plaintiff, and would deliver said jack in good condition;" and the breach alleged is that they did not

deliver him when the roads were soft, but when they were frozen; by means whereof his feet and limbs were greatly injured, and he became lame, sick and disordered, and finally died. It is then averred that without any knowledge on his part of such lameness, sickness and disorder, the plaintiff delivered his horse to the defendants.

The second count is in substance the same, with the added averments that defendants received the plaintiff's horse upon the express representation on their part that said jack had not suffered from being led over such hard and frozen roads, but had led freely and had not lagged any except as to the last mile; that plaintiff relied on said statements, and was ignorant of their falsity, and was thereby induced to part with his horse; that said representations were not true; that said jack did suffer, and was then suffering from being led over said hard and frozen roads, and had not led freely, but lagged for a long distance.

It is said the second count is in case. We think not. It is not averred that the representations set forth were fraudulently made or knowingly false. The averments in relation to them were unnecessary, but evidently made to explain the delivery of plaintiff's horse, and meet the anticipated defense of waiver by acceptance of the jack. Appellants showed their understanding of it at the time by filing the plea of *non assumpsit* to the whole declaration.

It appears that the jack, with the other property of the defendants mentioned, was delivered to plaintiff at his house about five o'clock in the afternoon of December 20, 1886. He had been led since six o'clock in the morning of that day, all the way from their residence, over roads that were frozen hard when they started, but thawed a little on the surface about noon, and so became somewhat slippery. There is no dispute as to his previous condition; all agree it was good. The testimony as to his treatment and appearance on the way, is conflicting. A number of witnesses who saw him at a point five miles from the plaintiff's house and others nearer, say he was lagging, looked overdone and was whipped considerably to be kept going. Defendants themselves admit that

Stearns v. Cook.

he was at times obstinate, but say he required and received no more than an occasional touching up or tapping. Plaintiff was at home when they arrived, saw him, fed him and put him for the night in a shed made of hay and banked up, twelve or fourteen feet long and eight or ten feet wide, with an opening on the east side four feet wide. The defendant Herman and his brother, who had brought him, stayed that night at plaintiff's house. The next morning he went to the barn lot, saw plaintiff and asked him how the jack was, and plaintiff said he was all right and had eaten his feed all right, both night and morning. They stayed to breakfast, and soon afterward received from plaintiff his horse, without a word of complaint from him, and left.

The jack died about four weeks afterward, from what cause is by no means clear. Plaintiff and others testified that upon being led out of the shed on the morning after delivery he appeared stiff and worn out; that his feet were broken off all round; that he was sore and hardly able to walk, and that his back and loins were welted up. They kept blankets on him, wrapped his legs with flannel and bathed them with pepper tea.

But he got no better. Yet he ate all his food for the first two or three days. An expert who saw him on the 22d of December, and concurs in this account of his appearance, says his pulse was not deranged, and he thought him not sick but "simply worn out by fatigue or something of that kind." Opinions differed as to the suitableness of the shed in which he was kept the first night. He was a Spanish jack, and therefore could not stand exposure to cold. Herman says there was no door, but only bars, at the opening on the east side, and that he told plaintiff the jack had been kept in a warm box stall, and would be liable to take cold in that shed. Mr. Swim, who had handled jacks for twenty years, and formerly owned this one and had often traveled him to and from fairs as far as twenty miles at a time, testified that he was a good traveler, could go thirty miles a day without injury, and that his feet were good; but that if he were forced over frozen or slippery ground and whipped every few steps to make him go

until he was fatigued, it would probably injure him; and that these jacks are sensitive to cold and should have a warm stall in winter.

Appellants, who are father and son, owned this jack together. The lowest estimate of his value in good condition was $250, and the verdict was for $150.

It is difficult to account for this result upon the supposition that the jury finally agreed upon any material question in the case. There was no dispute between these parties about the value of the jack. The difference on that point, and which was slight, was only between the witnesses, all of whom testified on the part of plaintiff. Defendants offered none. So much of their evidence as bore indirectly on that subject was in harmony with that of the plaintiff. It has not been suggested that there is a circumstance in the case to excite a suspicion that the estimate above mentioned was too high. Plaintiff says that in the trade he took him at that estimate and believes he was fully worth it. Everything in the evidence that tends to change it, tends to increase it. The court, in each of the two instructions given for the plaintiff, directed the jury, if they found for him, to "assess his damages at the amount the testimony shows the jack was reasonably worth," and the almost irresistible inference from their verdict, in the light of the evidence, is that they did not find for him, rather than that they wilfully disregarded that direction. There was some evidence tending to show fault on his part in respect to the shed, above noticed, and other treatment of the animal. They may have found that the loss was due in part to the fault of each, and so found in part for and in part against each. If so it was upon a misunderstanding of the law, and resulting in injustice, ought not to stand; for the court should not assume to determine which party was wronged, thereby substituting its own finding for that of the jury upon an issue submitted to theirs only.

Nor can it be well said that the error, if any, was in favor of the defendants. It may be that upon a right understanding of the law the finding would have been for them. They do not complain that the verdict was for too small an amount, but that it was for any at all.

Stearns v. Cook.

They claim, and seem to have believed, that the jack was in good condition when delivered.   They freely submitted him to the plaintiff's observation, rem ined there until after breakfast the next day, by which time the effect of his travel would naturally appear, showing no disposition to conceal anything, nor any haste to get away with the horse; and they charge his death to exposure, improper treatment, or other cause thereafter arising.

They further claim that, if not then in good condition, the plaintiff, accepting him after full opportunity for examination, thereby waived the defects—such, at least, as were visible.   He saw, handled and fed him in the evening and in the morning, and said he was all right.   If he did not take him out of the shed before defendant left, it was because he did not see fit to do so.   But now he claims that the bad condition was apparent enough when he was taken out very shortly afterward; that his feet, his limbs, his movement and his looks, all visible, plainly indicated it.   If these signs had not before been present and patent, the acceptance would not have been a waiver; but being present and patent to observation, the neglect to observe when he had full opportunity can not help him, and he should be treated as though he had observed them.   His knowledge that the state of the roads over which the jack had been led was just what the contract recognized to be dangerous to the feet and limbs, especially required that he should examine the feet and limbs for signs of injury.

There was, then, some ground in the evidence for the defense of waiver.   This was expressly presented in an instruction asked by defendants, which was not given as asked, but materially modified.   We think it faulty in not stating what would constitute an acceptance to make it a waiver, and what defects it would waive.

The modification did not improve it as a legal proposition. It did not attempt to correct the fault here noticed, but materially changed what, with such correction, would have required no change.   As asked, the instruction made proof of the acceptance of the jack after full opportunity for examination and delivery of the horse without any false representation by

defendants, an absolute defense; while the modification left those facts, if proved, as circumstances to be considered by the jury in finding their verdict—an idea of the law which we think was mistaken, and may have aided to produce the peculiar verdict found. Having refused to recognize the defense of waiver as presented by the defendants' instruction, the court should have qualified the first one given for the plaintiff, which entirely ignored it.

We are satisfied that a proper presentation of this case must have resulted in a different verdict—finding for the plaintiff with the damages proved, or finding for the defendants—and must so result if properly presented upon another trial.

*Reversed and remanded.*